**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**

| | |
|---|---|
| NEW MEXICO FORWARD PARTY, BOB PERLS, MICHAEL VIGIL, DENNIS DINGE, HARRY MONTOYA and FRANCES KAVA,<br><br>Appellants,<br><br>v.<br><br>MAGGIE TOULOUSE OLIVER, in her official capacity as Secretary of State of New Mexico, and BARBARA DELANEY, in her official capacity as County Clerk of Luna County, New Mexico,<br><br>Appellees. | No.: 26-2145 |

**APPELLANTS' OPPOSED EMERGENCY MOTION FOR STAY AND INJUNCTION PENDING APPEAL**

Plaintiff-Appellants New Mexico Forward Party ("NMFP"), Bob Perls, Michael Vigil, Dennis Dinge, Harry Montoya and Frances Kava (collectively, "Plaintiffs"), through undersigned counsel, move under Federal Rule of Appellate Procedure 8(a) for an injunction pending appeal directing Defendant-Appellee Secretary of State to place Plaintiff-Appellant Perls (U.S. Senate) and Plaintiff-Appellant Vigil (State Auditor) on New Mexico's November 3, 2026 general election ballot as NMFP's nominees, and for a stay of the Order Denying Motion for Preliminary Injunction, ECF No. 22 (Sept. 2, 2026) (the "Order"), pending Plaintiffs' interlocutory appeal to this Court.

Plaintiffs have a strong likelihood of prevailing on their appeal because the Order's analysis rests on a demonstrably false premise. Plaintiffs challenge the constitutionality of New Mexico's

ballot access scheme primarily because it requires that they submit 10 separate petitions with 131,361 total signatures to qualify NMFP and its candidates for statewide office for the general election ballot. Yet the Order measures the burden imposed on Plaintiffs' First and Fourteenth Amendment rights based on the 14,200-signature requirement that New Mexico imposes on just one NMFP candidate for statewide office. Plaintiffs do not seek to run a single candidate for statewide office. Plaintiffs seek to establish a political party and run candidates for all offices—federal, state and local—and consequently the burden imposed must be measured based on what New Mexico actually requires of them. That is not a single petition with 14,200 signatures, as the Order incorrectly concludes, but 10 separate petitions with 131,361 total signatures (for statewide offices only; a separate and additional petition is required for each candidate for the hundreds more district and local offices). As set forth below, the Order commits additional errors, but this fundamental error that misstates and minimizes the burden imposed on Plaintiffs' First and Fourteenth Amendment rights warrants an immediate stay.

Because ballots must be finalized within days, Plaintiffs respectfully request a ruling as soon as practicable. Pursuant to Fed. R. App. P. 8(a)(1), Plaintiffs state that on September 4, 2026 they filed an Emergency Motion for Stay and Injunction Pending Appeal in the District Court, ECF No. 27, but that Court has not yet ruled on the Motion. Plaintiffs therefore file the instant Motion pursuant to Fed. R. App. P. 8(a)(2). Plaintiffs state that they have made the showing required by 10th Cir. R. 8.1, as set forth below.

Pursuant to 10th Cir. R. 27.1, Plaintiffs sought Defendant-Appellees' concurrence in the relief requested. Defendant-Appellees' respective counsel advised that Defendant DeLaney does not oppose the motion but Defendant Toulouse-Oliver does. The Motion is therefore opposed.

## The Question Presented on Appeal

New Mexico's statutory scheme regulating ballot access is unique. Like many states, New Mexico requires a new political party to submit a petition to become ballot-qualified, but then, unlike any other state, New Mexico also requires that each candidate nominated by the party submit a separate petition to qualify for the general election ballot. As a result, New Mexico's statutory scheme is uniquely burdensome: as applied in 2026, it required NMFP to submit 10 separate petitions with 131,361 total signatures to qualify a full slate of candidates for statewide office. No other state requires so many signatures to qualify a slate of statewide candidates, and no other state is even close. Additionally, each candidate for the hundreds more district and local offices is also required to submit a separate petition, subject to its own signature requirement.

Plaintiffs claim this statutory scheme violates their First and Fourteenth Amendment rights. Applying the *Anderson/Burdick* analysis, the District Court declined to measure the burden imposed on Plaintiffs' rights based on the actual total number of signatures it requires, but instead measured the burden based on the 14,200 signatures required of a single candidate. Concluding that such a requirement was reasonable, the District Court applied a deferential standard of review and upheld New Mexico's statutory scheme. Did the District Court err by minimizing the burden New Mexico's statutory scheme imposes, by disregarding facts and evidence establishing it as severe, and thus applying an improperly deferential standard of review?

### I. Procedural Posture and the Facts the Order Accepted.

Plaintiffs initiated this action by filing their Complaint on July 14, 2026, asserting claims under 42 U.S.C. § 1983 for the violation of their First and Fourteenth Amendment rights. The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

Plaintiffs moved for a preliminary injunction on July 27, 2026, ECF No. 8; the District Court heard the motion on August 28, 2026, ECF No. 21, and denied it on September 2, 2026, ECF No. 22. Plaintiffs filed a Notice of Appeal to the United States Court of Appeals for the Tenth Circuit the same day, ECF No. 24, and moved for a stay pending appeal on September 4, 2026. ECF No. 27. This Court has jurisdiction over this interlocutory appeal pursuant to 28 U.S.C. § 1292(a)(1).

NMFP filed its qualifying petition on May 8, 2026 and was certified as a minor political party on May 14, 2026. Order at 10. Because NMFP had 227 registered members, § 1-8-2(B) required each of its statewide nominees to submit a petition bearing 14,200 signatures by June 25, 2026. *Id.* at 3, 9–10. Perls and Vigil therefore had 41 days to petition. *Id.* at 16.

For 25 to 29 of those 41 days, Perls and Vigil could not use the State's online petitioning platform. The Election Code freezes voter registration processing from May 5 through June 8, §§ 1-4-8(A), (B), (D), and because NMFP was certified during that freeze, Perls and Vigil "could not update their registration to reflect NMFP until June 8, 2026," and "could not use the online system to obtain signatures until June 8, 2026." Order at 10. Their declarations place actual availability at June 12. *Id.* at 10–11. The Court found that, "[d]ue to NMFP's timing, . . . candidate access to the online system was restricted." *Id.* at 10.

Perls and Vigil were diligent. Plaintiffs spent roughly $63,000, including $44,500 on a digital campaign that sent 1.66 million text messages to more than 500,000 registered voters; more than 56,000 of those voters tried to sign online, but the closed platform yielded fewer than 2,700 signatures. Order at 11. Perls also deployed paid circulators to gather wet signatures at public events. *Id.* at 10. Vigil submitted 4,400 signatures and Perls 2,700, *id.* at 11—each more than the

2,505 and 2,351 signatures New Mexico required of Democratic and Republican statewide candidates seeking the primary ballot. Mot. at 6, ECF No. 8 (citing Compl. ¶ 44).

The three NMFP nominees who reached the ballot ran for local office: Dinge (Public Education Commission, 1,014 signatures), Montoya (Santa Fe County Magistrate, 928 signatures), and Kava (Luna County Magistrate, 59 signatures). Mot. at 9–10, ECF No. 8; Order at 11.

## II. Plaintiffs Satisfy Each Factor Necessary to Obtain an Injunction Pending Appeal.

A stay or injunction pending appeal turns on four factors: (1) whether the applicant has made a strong showing of likely success on the merits; (2) whether the applicant will be irreparably injured absent relief; (3) whether relief will substantially injure the other parties; and (4) where the public interest lies. *See Nken v. Holder*, 556 U.S. 418, 434 (2009). When the government is the opposing party, the last two factors merge. *See id.* at 435; *Ortega v. Grisham*, 148 F.4th 1134, 1142 (10th Cir. 2025). The Tenth Circuit has granted injunctive relief pending appeal in a First Amendment election case on this showing. *See Homans v. City of Albuquerque*, 264 F.3d 1240, 1243 (10th Cir. 2001).

## III. Plaintiffs Have a Strong Likelihood of Success on Appeal Because the Order Misapplied the *Anderson/Burdick* Analysis.

### A. The Order Misstates and Minimizes the Burden Imposed on Plaintiffs.

When courts apply the *Anderson/Burdick* analysis, "much of the action takes place at the first stage"—identifying the character and magnitude of the burden on plaintiffs' rights—because that is what determines the level of scrutiny the court must apply. *Stone v. Bd. of Election Comm'rs for City of Chicago*, 750 F.3d 678, 681 (7th Cir. 2014). It is therefore critical that courts properly characterize the burden lest they apply an improper standard of review. The Order fails to do so. It misstates and minimizes the burden imposed on Plaintiffs and disregards facts and evidence

establishing that burden as severe. As a result, the Order applies an improperly deferential standard to uphold ballot access requirements that are unconstitutional under well-settled precedent.

The Order states that Plaintiffs "misrepresent[]" the burden New Mexico imposes on them by measuring it based on the 10 separate petitions with a total of 131,361 signatures they must submit to qualify a slate of statewide candidates. Order at 18. Because "the onus is not on the party to gather signatures for their candidates," the Order reasons, "it is inaccurate to portray the signature requirement as one imposed on the party to field a full statewide slate." *Id.* at 19. Instead, the Order measured the burden based on the number of signatures required of a single candidate for statewide office—14,200—and found it to be "a reasonable burden, not a severe one…." *Id.*

As a threshold matter, the Order's reasoning contradicts the plain language of both Plaintiffs' Complaint and New Mexico statutory law. Plaintiff NMFP "seeks to qualify candidates for the ballot in local, state and federal elections in New Mexico, to grow and develop as a political party … and to promote and build support for its platform among New Mexico voters." Compl. ¶¶ 6, ECF No. 1 (emphasis added). Each individual Plaintiff also seeks "to campaign for, speak and associate with and vote for NMFP's candidates, and … is harmed by their exclusion from New Mexico's general election ballot." Compl. ¶¶ 7-11, ECF No. 1. Furthermore, it is black letter law that to accomplish these objectives in 2026, Plaintiffs were required to submit not one petition with 14,200 signatures, but 10 separate petitions with 131,361 signatures (for statewide offices only). *See* New Mexico Statutes § 1-7-2(A) (establishing minor party petition requirement);[1] § 1-8-2(B)(1) (establishing minor party candidate petition requirements); *see also* New Mexico Office of the Secretary of State, *2026 Nominating Petition for Minor Parties and Decline to State (Independent) Candidates Calculations ("Petition Calculations")*, at 2 (calculating each

[1] Hereinafter, all statutory citations are to the New Mexico Statutes unless otherwise indicated.

candidate's signature requirement) (attached as Exhibit A).[2] Consequently, by measuring the burden on Plaintiffs as if they seek to run just one candidate for statewide office, rather than to run candidates for all offices as they allege, it is the Order—not Plaintiffs—that "misrepresents the burden on Plaintiffs." Order at 18.

The Order's reasoning is also irreconcilable with Supreme Court precedent. Plaintiffs have a "constitutional right … to create and develop [a] new political part[y]." *Norman v. Reed*, 502 U.S. 279, 288 (1992). That right "means little if a party can be kept off the election ballot and thus denied an equal opportunity to win votes." *Williams v. Rhodes*, 393 U.S. 23, 31 (1968); *see also Kusper v. Pontikes*, 414 US 51, 58 (1973) (recognizing that "a basic function of a political party is to select the candidates for public office to be offered to the voters at general elections."). Similarly, "the right to vote is heavily burdened if that vote may be cast only for one of two parties at a time when other parties are clamoring for a place on the ballot." *Id*. Furthermore, "the rights of voters and the rights of candidates do not lend themselves to neat separation [because] laws that affect candidates always have at least some theoretical, correlative effect on voters." *Bullock v. Carter*, 405 U.S. 134, 143 (1972). As this well-settled precedent establishes, the 10 separate petitions with 131,361 signatures that New Mexico required Plaintiffs to submit to run a full slate of statewide candidates burden Plaintiffs' rights not only as *candidates*, as the Order incorrectly concludes, Order at 18-19, but also as *voters* and *citizens who seek to grow and develop a new political party*. Plaintiffs have submitted uncontested evidence that New Mexico's statutory scheme severely burdened these rights. Perls Decl. ¶¶ 4, 7-8, 11, ECF No. 8-3; Vigil Decl. ¶ 3, ECF No. 8-2; Montoya Decl. ¶ 3, ECF No. 8-4; Kava Decl. ¶ 3, ECF No. 8-5; Dinge Decl. ¶ 3,

[2] The Petition Calculations are in the District Court record. They were formerly available online at https://www.sos.nm.gov/wp-content/uploads/2026/04/2026-Nominating-Petition-Calculationsfor-Minor-Parties-and-Independent.pdf (last accessed July 23, 2026), and are attached herewith for the Court's convenience.

ECF No. 8-6. The Order's failure to address the burden on these rights, or the actual burden imposed on NMFP and its candidates rather than just a single candidate, was clear error.

The Order acknowledges that Plaintiffs submitted evidence regarding other states' ballot access requirements but fails to identify the evidence or provide a basis for its summary conclusion that the evidence is insufficient to support Plaintiffs' claims. Order at 17-18. Plaintiffs did not merely submit evidence of "the lesser signature requirements of Texas, Utah, and Colorado," as the Order states. Order at 17. Rather, Plaintiffs' Motion states:

> The 10 petitions containing 131,361 signatures that New Mexico requires of a minor party to place its nominees for statewide office on the general election ballot is, by far, greater than the requirement imposed by any other state. Winger Decl. ¶ 21. The next closest state is Texas, which in 2026 imposed a requirement of 81,030 signatures. Winger Decl. ¶ 21; *see* TEX ELEC. CODE § 181.005(a) …. Thus, while Texas's population of approximately 31.7 million dwarfs that of New Mexico's population of approximately 2.1 million, *see* Stats America, Population Estimate for 2025, available at https://www.statsamerica.org/sip/rank_list.aspx?rank_label=pop1 (accessed July 25, 2026) (citing U.S. Census Bureau data), New Mexico's signature requirement is more than 38 percent greater than Texas's. By contrast, in New Mexico's neighboring state of Colorado (population 6 million, *see id.*), a single petition with 10,000 signatures qualifies a minor party to place its nominees for all offices on the general election ballot. Winger Decl. ¶ 19. And in Utah (population 3.5 million, *see* Stats America, *supra*), a single petition with 2,000 signatures is sufficient. Winger Decl. ¶ 18.

Pl. Mot. for Prel. Inj. at 10-11, ECF No. 8.

Contrary to the Order's characterization, therefore, Plaintiffs' evidence does not just establish that other states impose "lesser" requirements than New Mexico, but that New Mexico's requirements are far more severe than any other state and that they are wildly disproportionate to New Mexico's asserted interest in requiring that Plaintiffs demonstrate a "modicum of support." New Mexico's requirements are more than 13 times greater than Colorado's, and more than 65 times greater than Utah's, even though both states have significantly larger populations than New Mexico. The yawning disparity between New Mexico's highest-in-the-nation requirements and those of its neighboring states supports the conclusion that New Mexico's requirements are far

more restrictive than necessary to further any legitimate state interest. Furthermore, Defendants do not dispute the foregoing evidence, and even if they did, it is supported by citation and by the sworn testimony of Richard Winger, a nationally-recognized expert in ballot access law who has testified as a fact witness and expert witness in countless cases. Winger Decl., Ex. A, at 3-10, ECF No. 8-1.

The Order's rationale for declining to credit Plaintiffs' uncontested evidence is not persuasive. "[E]ven if New Mexico did have the most stringent ballot-access framework compared to other states, that does not make it unconstitutional," the Order concludes. Order at 18. Again, however, this generality misstates Plaintiffs' position by eliding the specific facts. Plaintiffs do not argue that New Mexico's requirements are unconstitutional merely because they are the most stringent in the nation, but because they are 13 times greater than Colorado's, 65 times greater than Utah's, and greater even than Texas's, all of which supports the conclusion that New Mexico's are unnecessarily restrictive by many orders of magnitude.

The Supreme Court has recognized that ballot access requirements are also severely burdensome if they "operate to freeze the political status quo." *Jenness v. Fortson*, 403 U.S. 431, 438 (1971). Relatedly, the Supreme Court has recognized that "past experience" should guide the analysis: a statutory scheme is severely burdensome if minor party and independent candidates "only rarely … succeed in getting on the ballot," whereas the reverse is true if they "have qualified with some regularity." *Storer v. Brown*, 415 U.S. 724, 742 (1974). Plaintiffs submitted evidence sufficient to demonstrate a severe burden under these tests, but once again the Order merely acknowledges that Plaintiffs submitted such evidence but fails to address it. Here, the Order states that Plaintiffs argue for a severe burden "based on the infrequency of minor party candidates appearing on the ballot in New Mexico." Order at 26. In fact, Plaintiffs argue that:

> [E]vidence in the public record—*i.e.*, New Mexico's official elections results—confirms that the challenged provisions operate to freeze the political status quo. Although minor parties may become "qualified" pursuant to § 1-7-2(A), they rarely place their nominees on New Mexico's general election ballot. Independent candidates also rarely qualify. In almost every race for U.S. House and U.S. Senate from 2002 – 2024, just two candidates qualified for the ballot. Winger Decl. ¶ 23. That is also true of New Mexico's elections for statewide state offices in the same period—just two candidates qualified for the ballot. Winger Decl. ¶ 24. Indeed, in every election for state and federal office (except President)[2] since 2000, New Mexico has never had more than three candidates on the ballot. Compl. ¶ 55 (citing official election results); Winger Decl. ¶ 23. Even fewer candidates appear on the ballot for state legislature. In a *majority* of state legislative races in almost every election cycle for the last two decades, a single candidate appeared on the ballot running unopposed, Compl. ¶¶ 58-72, and not one of those races had more than three candidates on the ballot. Compl. ¶ 73; *see generally* New Mexico Secretary of State, Election Results, *available at* https://www.sos.nm.gov/voting-and-elections/election-results/ (accessed July 26, 2026).
>
> [2]Presidential elections are an exception because New Mexico imposes no petition requirement on minor party nominees for President and Vice President. See § 1-15-3. Even so, New Mexico has never had an overcrowded ballot in presidential elections for the last 24 years. Compl. ¶¶ 56-57.

Pl. Mot. for Prel. Inj. at 12, ECF No. 8.

This evidence is also uncontested and cannot be genuinely disputed because it is based on public records. Furthermore, it does not merely establish the "infrequency" with which minor party and independent candidates appear on New Mexico's general election ballot: it proves that they almost never do. If such evidence is insufficient to demonstrate a frozen status quo under *Jenness* or to satisfy the "past experience" test under *Storer*, it is difficult to imagine what could.

The Order's rationale for discounting Plaintiffs' evidence here is even less convincing. First, the Order asserts that Plaintiffs' "status quo argument is not coherent" because NMFP's candidates have not run for office prior to 2026, and therefore "[w]hether NMFP candidates appear frequently or infrequently is not ascertainable." Order at 26. This, too, is clear error: the frozen status quo test under *Jenness* and the past experience test under *Storer* do not ask whether a particular minor party or independent candidate has successfully qualified for the ballot with any

regularity, but rather whether *any* such party or candidate has. *See Jenness*, 403 U.S. at 438-39; *Storer*, 415 U.S. at 742. To suggest that application of such a test is "not coherent" in the case of a newly-formed political party is simply wrong.

The Order next asserts that Plaintiffs' citation to *Jenness* is "inapposite" because New Mexico's statutory scheme is distinguishable from the Ohio statutory scheme discussed in *Jenness*, which had been found to freeze the status quo. Order at 27. But Plaintiffs cite to *Jenness* only for the test it announces, which is still good law. That New Mexico's statutory scheme differs from the Ohio scheme discussed in *Jenness* has no bearing on whether the New Mexico scheme operates to freeze the political status quo. Plaintiffs' evidence establishes that it does.

In spite of that evidence, which the Order does not address, the Order concludes that "reasonably diligent candidates can access the ballot and therefore the regulatory scheme does not freeze the status quo." Order at 27 (citing *Storer*, 415 U.S. at 742). The only evidence cited in support of this conclusion is that "Plaintiffs' *local* candidates qualified" in 2026, Order at 27 (emphasis added), but that fact says nothing about Plaintiffs' claim that the 10 petitions and 131,361 signatures New Mexico requires of Plaintiffs to qualify their candidates for *statewide* office is severely burdensome. To qualify for the general election ballot, Kava needed only 59 signatures; Montoya 928; and Dinge 1,014. By contrast, as candidates for statewide office, Perls and Vigil each needed 14,200—14 to 240 times more than the local candidates—within the same petitioning period and without the online platform for most of it. Whether three local candidates could gather a few hundred signatures in a county or district says nothing about whether candidates for statewide office could gather 14,200 apiece, much less whether a newly qualified minor party can be required, consistent with the Constitution, to submit 10 separate petitions with 131,361 signatures to run a full slate of statewide candidates. Plaintiffs' evidence shows that it cannot.

Contrary to the Order's assertion, nothing in the record—including evidence pertaining to Plaintiffs' local candidates—contradicts that conclusion.[3]

**B. The Severe Burden Imposed By New Mexico's Excessive Signature Requirements Is Compounded By the 41-day Petitioning Period and the Voter Registration Freeze.**

When a plaintiff challenges ballot access provisions in combination, as Plaintiffs do here, the court must weigh their combined effect rather than measure each statute in isolation. *See Utah Republican Party v. Cox*, 892 F.3d 1066, 1088 (10th Cir. 2018); *Graveline*, 992 F.3d at 536 (citation omitted). The Order did the opposite. Not only did it evaluate the 14,200-signature requirement imposed on a single statewide candidate in isolation from every other signature requirement Plaintiffs were required to meet, but also, it treated the other provisions that Plaintiffs challenge—including the 41-day petitioning period, the voter registration freeze, and the doubled 2% signature requirement for "small" minor parties—as though they did not exist. But just as the Order was obligated to assess the burden imposed by New Mexico's signature requirements based on the actual number of signatures Plaintiffs were required to submit, so too was it obligated to assess that burden in combination with the truncated petitioning period and the voter registration freeze New Mexico imposed, which made its online petitioning platform unavailable for most of Plaintiffs' petitioning period.

The Order held that NMFP's "forty-one day window to gather signatures was self-imposed" because "[n]othing prevented NMFP from forming prior to the availability of the petition forms." Order at 17 (citing *Libertarian Party of N.M. v. Vigil-Giron*, 2006 WL 8443845, at *10

[3] The Order repeatedly cites to *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1310 (10th Cir. 2007), but that case is distinguishable. *Herrera* faulted the Libertarian Party for offering no testimony from candidates who actually attempted to gather signatures. Order at 18 (quoting *Herrera*, 506 F.3d at 1310). Perls and Vigil attempted, spent $63,000, reached half a million voters, and fell short. Order at 10–11. That is precisely the evidence *Herrera* found missing, and the Order's conclusion that Plaintiffs' showing "is not the type of evidence listed in *Herrera*," *id.* at 18, cannot be squared with *Herrera*'s own description of the evidence lacking there.

(D.N.M. Sept. 18, 2006)). But the District Court has previously rejected this same reasoning. *See Constitution Party of New Mexico v. Duran*, No. 1:12-cv-325 (Dec. 9, 2013) (order granting summary judgment to minor party plaintiff). In holding that New Mexico's previous April deadline for minor parties to become ballot-qualified violated the minor party Plaintiff's First and Fourteenth Amendment rights, the Court expressly rejected "Defendant's argument that if Plaintiff starts collecting signatures earlier in the year, the April deadline must not be burdensome to minor parties like Plaintiff." *Id.* Here too the Legislature was responsible for establishing the party-petition deadline, which it set at the twenty-third day after the primary—the same day the nominees' petitions are due. §§ 1-7-2(A), 1-7-4(A), 1-8-2(B); Mot. at 5, ECF No. 8. NMFP filed 48 days early. Order at 10. A party that beats the statutory deadline by seven weeks has not "imposed" anything on itself; it has used the time the State allotted. Holding that a party must ignore the Legislature's deadline and form the year before, on pain of forfeiting its nominees' ballot access, converts the statutory schedule into a trap and is not a burden analysis at all.

The freeze on voter registration compounds the error. The Order attributed the closure of the online platform to "NMFP's timing," Order at 10, yet the freeze is imposed by statute, §§ 1-4-8(A), (B), (D), and § 1-8-2(E) separately required NMFP's nominees to be registered members no later than the day the party filed its petition. Order at 2. The State thus (i) required candidates to change registration by May 8, (ii) refused to process registration changes from May 5 to June 8, and (iii) conditioned online petitioning on completed registration. Whatever label is attached—"deactivation" or "statutory pause"—the cause is state law and the effect on the as-applied burden is identical: the platform on which Plaintiffs' $44,500 outreach campaign depended was unavailable for the majority of the petitioning period. Where a State's own measures impede signature gathering during the petitioning period, courts treat the resulting shortfall as the State's

burden to justify and reduce the requirement accordingly. *See Garbett v. Herbert*, 458 F. Supp. 3d 1328, 1352 (D. Utah 2020) (reducing Utah's signature requirement where the State's emergency orders restricted signature gathering); *see also Libertarian Party of Il. v. Pritzker*, 455 F. Supp. 3d 738, 745 (N.D. Ill. 2020) (granting similar relief). Here, the uncontested evidence establishes that New Mexico's truncated petitioning period significantly increased the burden imposed on Plaintiffs. Perls Decl. ¶¶ 13-16, ECF No. 8-3; Vigil Decl. ¶¶ 7-12, ECF No. 8-2; Montoya Decl. ¶¶ 6-7; Kava Decl. ¶ 7, ECF No. 8-5; Dinge Decl. ¶¶ 7-13, ECF No. 8-6.[4]

Finally, the limited period New Mexico allows for minor party nominees to circulate their petitions imposes unequal burdens on them because New Mexico allows major party candidates a significantly longer petitioning period despite their substantially lower signature requirements. Pl. Mot. for Prel. Inj. at 18-19, ECF No. 8. The Order denies that New Mexico grants major party candidates "preferential treatment" but fails to address this unequal burden. Order at 21.

### C. The Order Errs By Uncritically Accepting Generic State Interests as Justification for the Severe Burdens New Mexico's Statutory Scheme Imposes.

The second step of the *Anderson/Burdick* analysis requires the court to "identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule." *Anderson*, 460 U.S. at 789. The Order repeatedly fails to do so. For instance, the Order finds that New Mexico's signature requirements serve the "important interest in requiring candidates demonstrate support," Order at 19, but provides no analysis of how or why New Mexico is justified in requiring more signatures, by far, than any other state in the nation. Winger Decl. ¶¶ 9-14, 21, 23-25, ECF No. 8-1.

---

[4] *Vigil-Giron* does not carry the weight the Order placed on it. Order at 17. That decision addressed a party that had not attempted to gather candidate signatures and rested on the absence of any evidence of burden, *see Herrera*, 506 F.3d at 1310; it did not hold that a party which meets the statutory deadline forfeits its right to challenge the petitioning period the statute creates.

Similarly, the Order fails to identify any state interest that could justify New Mexico allowing major party candidates a longer petitioning period than it allows minor party candidates, when major party candidates need only a fraction of the signatures that minor party candidates must obtain. Pl. Mot. for Prel. Inj. at 18-19.

The Order also excuses the Secretary's failure to proffer any justification for New Mexico's arbitrary and punitive requirement that minor parties with relatively few members must obtain twice the number of signatures required of larger minor parties "other than the state interest in regulating elections." Order at 24; *see* Pl. Mot. for Prel. Inj. at 3-4, 15, ECF No. 8. Rather than hold the Secretary to its burden under the *Anderson/Burdick* framework, the Order supplied its own justification, reasoning that a larger minor party "has more demonstrated support," so its candidates should face a lower hurdle. Order at 24. A generalized interest in "regulating elections" is not a "precise interest," and a court may not sustain a severe burden based on "generalized and hypothetical interests identified in other cases." *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 593 (6th Cir. 2006); *see Anderson*, 460 U.S. at 793. Furthermore, where the State can serve any interest in a "modicum of support" through the 1% requirement it applies to other minor parties, the 2% requirement is not narrowly tailored as applied to NMFP. *See Norman*, 502 U.S. at 289.

**IV. Exclusion From the Ballot Is Irreparable Harm Independent of the Merits Ruling.**

"The loss of First Amendment freedoms, for even minimal periods of time, constitutes irreparable injury," and when a constitutional deprivation is alleged, "no further showing of irreparable injury is necessary." *Fish v. Kobach*, 840 F.3d 710, 752 (10th Cir. 2016) (citation omitted). The Tenth Circuit applied that rule to reverse the denial of a preliminary injunction in

*Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1263-64 (10th Cir. 2016), holding that the likelihood of a First Amendment violation, standing alone, established irreparable injury.

### V. The Balance of Harms and the Public Interest Favor Placing Two Qualified-Party Nominees Who Have Demonstrated a Substantial Modicum of Support on the Ballot.

The requested relief—placing two names on a ballot—imposes a negligible administrative burden; the Secretary already added Kava after Plaintiffs moved for preliminary relief. Order at 4. The State "does not have an interest in enforcing a law that is likely constitutionally infirm," and "the public interest will perforce be served by enjoining the enforcement of the invalid provisions of state law." *Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 771 (10th Cir. 2010); *see Awad v. Ziriax*, 670 F.3d 1111, 1131–32 (10th Cir. 2012) ("it is always in the public interest to prevent the violation of a party's constitutional rights"); *Fish*, 840 F.3d at 754–56.

## CONCLUSION

For the foregoing reasons, the Court should stay the District Court's Order denying Plaintiff-Appellants' Motion for Preliminary Injunction and enter an Order directing Defendant-Appellee Toulouse-Oliver to place Plaintiff-Appellants Perls and Vigil on New Mexico's November 3, 2026 general election ballot as the New Mexico Forward Party's nominees for United States Senate and State Auditor, respectively.

Respectfully submitted,

WESTERN AGRICULTURE,
RESOURCE AND BUSINESS
ADVOCATES, LLP

*/s/A. Blair Dunn, Esq.*
A. Blair Dunn, Esq.
Jared R. Vander Dussen, Esq.
400 Gold Ave. SW, Suite 1000
Albuquerque, NM 87102
Telephone: (505) 750-3060
Facsimile: (505) 226-8500

abdunn@ablairdunn-esq.com
warba.llp.Jared@gmail.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 8, 2026, a true and correct copy of the foregoing was filed electronically pursuant to the CM/ECF procedure for the District of New Mexico and caused counsel of record to be served by electronic means.

*/s/A. Blair Dunn, Esq.*
A. Blair Dunn, Esq.