**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**

NEW MEXICO FORWARD PARTY,
et al.,

Plaintiffs – Appellants,

v. No. 26-2145

MAGGIE TOULOUSE OLIVER, in her
official capacity as Secretary of State of
New Mexico, et al.,

Defendants – Appellees.

**THE SECRETARY OF STATE'S RESPONSE**
**IN OPPOSITION TO APPELLANTS' EMERGENCY**
**MOTION FOR STAY AND INJUNCTION PENDING APPEAL**

Secretary of State Maggie Toulouse Oliver (the Secretary) opposes Appellants' motion. The motion asks not for a stay, but for the exact injunctive relief the district court found inappropriate, twice. On an emergency basis, without the benefit of the record, transcript of the evidentiary hearing, or merits briefing, Appellants seek an order from this Court compelling the Secretary to place two candidates on New Mexico's general election ballot who did not qualify. This would not be an injunction pending appeal, but an award of all relief Appellants seek.

As explained in the district court's two orders on this issue, and in the Secretary's briefing in the district court, Appellants cannot meet the requirements

for an injunction. They are unlikely to succeed on the merits because New Mexico's requirements for minor party candidates to qualify are minimal and achievable for a reasonably diligent candidate. Appellants will not suffer irreparable harm absent an injunction because none of their constitutional rights are threatened—there is no automatic guarantee that a candidate will appear on a ballot in New Mexico, whether for a minor or major political party. Granting an injunction would harm the State's interest in administering an election in which ballot-qualified candidates have shown a modicum of support, and, at this late hour, cause extreme disruption to New Mexico's ballot printing efforts and election preparation. Critical deadlines have already passed and altering the ballot now risks significant errors in ballot accuracy. *See* Declaration of Mandy Vigil, September 11, 2026, attached as **Exhibit A**, ¶¶ 4–8. For these reasons, explained in more detail below, the Court should deny Appellants' motion.

## ARGUMENT

Appellants' chief complaint on appeal is that the district court mismeasured the burden imposed on minor party candidates under New Mexico's Election Code, N.M. Stat. Ann. §§ 1-1-1 to 1-26-6. The two candidates who didn't qualify here, Bob Perls and Michael Vigil, needed to each file petitions containing 14,200 signatures

from voters.[1] Order Denying Mot. for Preliminary Inj., Sept. 2, 2026, D.N.M. Doc. 22, at 10–11; N.M. Stat. Ann. § 1-8-2(B). But Appellants claim the true burden is what the Election Code requires of minor parties who wish to fill every statewide position, for a total of 131,361 signatures. What Appellants do not mention, however, is that no individual candidate in 2026 would need that many signatures, it would only ever be 14,200 at most.

This number, as recognized by the district court, is far fewer than requirements in other states that have been upheld even by the Supreme Court. D.N.M. Doc. 22, at 19. Under the Supreme Court's balancing test applicable to ballot access cases, this burden is minimal against New Mexico's recognized interests in requiring candidates to show support before qualifying for ballot placement. Appellants' issue on appeal is therefore unlikely to warrant reversal, and an injunction forcing the Secretary to put Mr. Perls and Mr. Vigil on the ballot cannot be justified. The district court appropriately denied an extremely disfavored preliminary injunction, and nothing in Appellants' motion suggests that this Court should reverse.

---

[1] Appellants' motion and this response focus on Mr. Perls and Mr. Vigil because this Court can provide no other Appellant relief. *See* Doc. 2-1 at 16. The district court has issued an order to show cause why the other plaintiffs should not be dismissed. D.N.M. Doc. 23.

## I
## THIS COURT MUST CLOSELY SCRUTINIZE APPELLANTS' REQUEST

The district court recognized that Appellants seek a highly disfavored injunction. D.N.M Doc. 22 at 8. This Court should as well. Disfavored injunctions are those that alter the status quo, mandate a party to act, or afford all relief a party seeks. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1259 (10th Cir. 2005). Appellants' request does all three. The status quo is Mr. Perls and Mr. Vigil are not qualified candidates, yet they ask to now be placed on the ballot. An injunction would also mandate the Secretary to print unqualified candidates on the ballot throughout the state. It is not a matter of simply refraining from enforcement, because there is no automatic right to appear on a ballot in New Mexico—every candidate in the State must show some support, but Appellants want an exception. Finally, an injunction would give Appellants everything they want out of this lawsuit: access to the ballot. Because an injunction here falls into every disfavored category, Appellants' request must be "closely scrutinized," and they must make a "strong showing" of likely success and that the balance of equities is in their favor. *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975–76 (10th Cir. 2004), *aff'd*, 546 U.S. 418 (2006).

All the more reason to hold Appellants to a higher standard is the fact that they seek immediate relief on an emergency basis in this Court. Despite the motion's

name, Appellants are not seeking a stay, because there is nothing to stay. Indeed, the motion is a near duplicate of a motion filed below, and the district court was unpersuaded by Appellants' arguments as nothing more than a rehash of the original preliminary injunction petition. *See* Order Denying Plaintiffs' Opposed Emergency Motion for Stay and Injunction Pending Appeal, Sept. 9, 2026, D.N.M. Doc. 28, at 2. The district court denied a preliminary injunction and thereby maintained the status quo in this case. *See Schrier*, 427 F.3d at 1259. Appellants seek to undo that decision through their emergency motion, circumscribing the usual course of an appeal.

## II
## APPELLANTS ARE UNLIKELY TO SUCCEED ON APPEAL

Appellants phrase the question on appeal as whether the district court erred by "minimizing the burden New Mexico's statutory scheme imposes" under the ballot access balancing framework of *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983) and *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). Doc. 2-1, at 3. But the opposite is true. Appellants on appeal inflate their burden by assuming they must obtain nearly ten times the signatures actually imposed on minor party candidates. When comparing the actual burden imposed on New Mexico Forward Party candidates against the State's interests in regulating elections, the district court correctly concluded that Appellants are unlikely to succeed on the merits or on appeal. D.N.M Docs. 22, 28.

**A. New Mexico's Ballot Access Requirements**
**<u>can be Met by a Reasonably Diligent Candidate</u>**

The Supreme Court has recognized that "there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process." *Burdick*, 504 U.S. at 433. Because states are empowered to regulate elections under Article I, Section 4 of the United States Constitution, they may include limits on "the field of candidates from which voters might choose," and that "does not of itself compel close scrutiny." *Bullock v. Carter*, 405 U.S. 134, 143 (1972). If the burden on candidates imposed by those limits is justified given a state's interests in regulating elections, then they are not unconstitutional. *Anderson*, 460 U.S. at 789. When the laws governing ballot access imposes "reasonable, nondiscriminatory restrictions," then "the State's important regulatory interests are generally sufficient to justify" those laws. *Id.* at 788.

For Mr. Perls and Mr. Vigil to succeed on appeal they must show that § 1-8-2(B) imposes an unconstitutional burden. The statute establishes the number of signatures a minor party candidate must obtain to qualify for the general ballot. *Id.* Despite Appellants' insistence that such a framework is unusual, Doc. 2-1 at 3, "the constitutionality of statutes requiring nominating petitions, or their functional equivalent, which contain a number of signatures equal to a percentage of total voters is beyond question," *Dillon v. Evans*, 549 F.2d 183, 184 (10th Cir. 1977). There are no circumstances here for the Court to question New Mexico's statutory framework,

a framework the Court has already upheld once before. *See Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303 (10th Cir. 2007).

Section 1-8-2(B) sets different signature requirements depending on the size of the political party. If the party has membership amounting to one percent (or more) of the total votes for governor in the last election, then they must gather signatures from any voter in New Mexico amounting to the same one percent. *Id.* If the party is smaller than that, then the candidates must collect signatures amounting to two percent to demonstrate sufficient support. *Id.*; *see also* § 1-8-51(C). In 2026, that two percent was 14,200, and New Mexico Forward Party candidates for statewide office had to meet that requirement because the party only had 227 registered members. D.N.M. Doc. 22, at 9–10.

To state the obvious, 14,200 is not 131,361. Appellants arrive at that number by including the 3,561 signatures the New Mexico Forward Party needed to form and then imagining that the party was able to field a full slate of nine statewide candidates in the general election. Doc. 2-1 at 6. Appellants also imply that a voter may only sign one candidate's petition. Needless to say, there are not nine candidates in this lawsuit who failed to qualify for the ballot. There are two, Mr. Perls and Mr. Vigil, and they only had to obtain 14,200 signatures. [2] These could be from the same

[2] Appellants only argue that the Election Code is unconstitutional as applied to them in these circumstances. D.N.M. Doc. 22 at 8.

14,200 voters, because New Mexico's Election Code does not restrain the same voter from signing petitions for multiple seats, only multiple candidates for the same seat. *See* N.M. Stat. Ann. § 1-8-65(C). Even if a minor political party had nine candidates for all statewide offices, candidates could obtain signatures from the same 14,200 voters. If the minor party had sufficient members then that number would be cut in half—in 2026, it would be 7,100, or one percent of the votes for governor in the last election. *See* § 1-8-2(B).

This is not a significant burden on a reasonably diligent candidate. The Secretary made available petitions for signature collection on March 2 this year, the first day she could do so under § 1-8-65(D), and candidates had until June 25 to solicit signatures from voters. §§ 1-8-2(B), 1-8-11. Collecting 14,200 signatures from any voter in New Mexico in that 115-day window would amount to 123 signatures per day. The Supreme Court has accepted that as many as 13,542 signatures in a day is not an "impossible" or "impractical undertaking." *Storer v. Brown*, 415 U.S. 724, 740 (1974). Requiring a candidate to collect 22,000 signatures has survived scrutiny. *American Party of Texas v. White*, 415 U.S. 767, 786 (1974). And New Mexico requiring an amount of one or two percent of *votes cast* is far fewer than five percent of *eligible* voters in Georgia's framework, which likewise withstood scrutiny. *Jenness v. Fortson*, 403 U.S. 431, 433 (1971). Ballot access requirements do not impose impermissible burdens when "a reasonably diligent

independent candidate" could meet them. *Storer*, 415 U.S. at 742. As has been recognized by courts upholding New Mexico's signature requirements, the Election Code "'imposes no suffocating restrictions whatever upon the free circulation of nominating petitions.'" *Parker v. Duran*, 180 F. Supp. 3d 851, 858 (D.N.M. 2015) (quoting *Jenness*, 403 U.S. at 438). In 2026 with modern technology and during a time when voters are politically engaged, obtaining 123 signatures in a day is more than achievable. *See id.* at 862 (upholding a former three percent signature requirement for independent candidates).

Appellants suggest that the district court found Mr. Perls and Mr. Vigil to have acted diligently here. That is not the case, and it is evident from the district court's order. The New Mexico Forward Party formed late into an election year, even though it could have formed at any time. Doc. 22 at 2; N.M. Stat. Ann. § 1-7-2. Even though the party had prospective candidates who contacted the Secretary's office in January, the New Mexico Forward Party did not announce its efforts to run in the election until April. D.N.M. Doc. 13-1, ¶ 8; D.N.M. Doc. 13, at 8 n. 2. Even though those candidates could begin petitioning for signatures on March 2—as they did *not* need to wait until their party had qualified—they chose to wait until May to begin. D.N.M. Doc. 8-2, ¶ 4; § 1-8-3.1; § 1-8-65(C) (informing voters signing petitions that "if the candidate's political party does not qualify as a minor political party, the candidate may run as an unaffiliated independent candidate"). And even though the Secretary's

office told those candidates that their preferred petitioning option, a newly established online petitioning platform, would not be available because of a statutory period where new voter registrations cannot be processed, the candidates opted to spend tens of thousands of dollars on a text campaign directing voters to the online petition. D.N.M. Doc. 13, at 10 n. 3; D.N.M. Doc. 13-1, ¶¶ 17–18; D.N.M. Doc. 8-2, ¶¶ 10,12. During that time Appellants knew and were encouraged by the Secretary's office to focus on paper petitions instead, but they chose not to. D.N.M. Doc. 13, at 10 n. 3. The district court appropriately recognized that whatever burdens Appellants faced were "self-imposed" and not the result of New Mexico's "regulatory architecture." D.N.M. Doc. 22, at 17. Appellants did not "use[] the time the State allotted," and the statutory period did not "compound" their burden. doc. 2-1 at 12–13. Appellants' two unsuccessful candidates dragged their feet and failed to gain voter support in time because of it.[3]

Lastly, although Appellants argue that the burden imposed by New Mexico's Election Code is so severe that it effectively freezes the status quo, doc. 2-1 at 9–11, three New Mexico Forward Party candidates made the ballot—60% of the individual appellants—and the party itself qualified to be recognized under New Mexico law.

[3] Appellants mistakenly, and repeatedly, assert that the online petition platform was dysfunctional. D.N.M. Doc. 8-2, ¶¶ 8–12. It was not. The online platform was functional from March 18, 2026, the earliest possible date, for all general ballot candidates who were ready to use it. D.N.M. Doc. 13-1, ¶ 16.

D.N.M. Doc. 13-1, ¶¶ 8, 19; D.N.M. Doc. 23, at 2. Moreover, New Mexico has a history of third party and independent candidates qualifying for the ballot. In addition to the plaintiffs, three candidates from the Libertarian Party qualified for this year's ballot. D.N.M. Doc. 13-1, ¶ 11. In the last ten years, fourteen candidates from parties like the Green Party, Constitutional Party, American Delta Party, and Better for America Party have qualified, both for local and statewide elections. *Id.* ¶ 11. Until 2025, the Libertarian Party even garnered enough votes in New Mexico elections to qualify as a major political party for seven years. *Id.* ¶ 12; N.M. Stat. Ann. § 1-7-7 (defining major political parties based in part on percentage support in prior elections). Appellants are simply incorrect that New Mexico's Election Code imposes such a massive burden on minor party candidates that only major parties have access to the ballot. Appellants never even presented evidence that other minor party candidates for statewide office in New Mexico have sought and failed to gain access to the ballot due to the supposed burden Appellants claim.

### B. New Mexico's Minor Party Candidate Qualification Framework Serves Well-Recognized State Interests

The district court recognized that New Mexico maintains an important interest in requiring candidates to demonstrate support to get on the ballot. D.N.M. Doc. 22, at 19. It is not alone, because those interests have been recognized by court after court, even in connection with New Mexico, and they are "admittedly vital." *Am. Party of Tex.*, 415 U.S at 782. A functioning democracy is not served by a

disorganized election, and the Constitution imparts on states the power to regulate the election process. U.S. Const. Art. I, § 4, cl. 1. It is "clear that States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election—and campaign—related disorder." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997). To prevent overcrowding, voter confusion, and frivolous candidacies that could otherwise result, states have an "undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot." *Munro v. Socialist Workers Party*, 479 U.S. 189, 194 (1986).

New Mexico's interests are served by its balanced and nondiscriminatory approach to ballot access, which ensures *all* candidates on a ballot have sufficient support. *See Werme v. Merrill*, 84 F.3d 479, 484 (1st Cir. 1996) (finding nondiscrimination when regulations do "not differentiate among Republicans, Democrats, and Libertarians" on their face). All political parties in New Mexico are formed the same way, by collecting signatures. § 1-7-2(A). Major parties are those that continue to have substantial support, measured by the number of members they have and the percentage of votes their candidates receive in the previous election. § 1-7-7. Even then, to get on the primary ballot, major party candidates must be nominated by 20 percent of party delegates at a convention *and* collect signatures from voters enrolled with the party. N.M. Stat. Ann. § 1-8-33 ("Candidates who seek

preprimary convention designation shall file nominating petitions . . . signed by a number of voters equal to at least two percent of the total vote of the candidate's party in the state or congressional district . . . ."). If they fail to get 20 percent, they have an increased obligation to obtain four percent of the total vote for the candidate's party. *Id.* Then the candidates go through a primary election, where voters from their party choose the candidate to appear on the general ballot.[4]

Minor parties, by statutory definition, do not have the established candidate support and membership. *See* § 1-7-7. Like major party candidates, they must collect signatures to appear on the general ballot. If the party is large enough—membership amounting to more "than the number of signatures required for that office"—then candidates need only collect signatures amounting to one percent of votes for governor in the previous election. § 1-8-2(B). This means signatures only from the party's members would suffice to get their candidates qualified. But if the party has fewer members (in other words they do not have the same base support) candidates must collect more signatures, two percent. *Id.*

---

[4] The district court mistakenly stated that major party candidates were *either* required to obtain the vote of twenty percent of party delegates or signatures amounting to two percent. D.N.M. Doc. 22, at 21. N.M. Stat. Ann. § 1-8-21.1(C) permits minor parties to designate candidates for nomination, but candidates must still submit a declaration of candidacy and nominating petition with signatures. N.M. Stat. Ann. § 1-8-21, § 1-8-33(B).

Every step in this framework, be it major or minor party candidates, is designed to involve voters to ensure that candidates on statewide ballots have some support. This structure does not have gross disparities between major and minor party candidates, and what differences there are exist by reason. Differences between how major and minor political parties are regulated "are not *per se* unconstitutional." *Rogers v. Corbett*, 468 F.3d 188, 196 (3d Cir. 2006). Requiring candidates to collect signatures separately from their party recognizes the obvious fact that a candidate, even though a member of a political party, may not have any real voter support individually. The "candidate petitioning requirement does add more in the way of showing public support." *Libertarian Party of N.M. v. Vigil-Giron*, CIV-06-0615 MV/ACT, 2006 WL 8443845, at *11 (D.N.M. Sept. 18, 2006). And it serves New Mexico's interest in ensuring that serious candidates appear on the ballot, which can reduce ballot crowding, costs, and voter confusion—issues New Mexico has specifically experienced in its past. *See Dillon v. King*, 1974-NMSC-096, ¶ 12, 87 N.M. 79 (overcrowding was "a real and present danger in New Mexico"); *Vigil-Giron*, 2006 WL 8443845, at *6 (citing 41st Legislature, First Session 1993, House Memorial #56 and discussing its directive to the Secretary to recommend changes to the Election Code to address overcrowding).

Appellants complain that the district court was "uncritical" in its acceptance of New Mexico's interests, doc. 2-1, at 14, but this ignores New Mexico's

experienced history of crowded ballots. Moreover, "[t]he Supreme Court has 'never required a State to make a particularized showing of the existence of voter confusion, ballot overcrowding, or the presence of frivolous candidacies prior to the imposition of reasonable restrictions on ballot access.'" *Parker*, 180 F. Supp. 3d at 861 (D.N.M. 2015) (quoting *Munro*, 479 U.S. at 194–95). There is nothing uncritical about accepting well-recognized interests supporting New Mexico's current election framework.

Appellants also make much about New Mexico being "unique" in its Election Code requirements, and compare it to other states where it may be easier for candidates to get on the ballot. Doc. 2-1, at 8–9. Nothing requires ballot access requirements to be uniform across all states, and the fact that the Constitution gives states power to regulate even federal elections practically guarantees they won't be. *See* Const. art. I, § 4. If states are indeed "laboratories of democracy," it is certainly evident in the manner in which they each regulate elections. *See New State Ice Co. v. Liebmann*, 285 U.S. 262, 311 (1932) (Brandeis J., dissenting). The federal reports are practically littered with lawsuits involving these myriad regulatory schemes, so it is not convincing to criticize New Mexico as "unique" when the same point may be lobbied against aspects of any state's election code. Moreover, it is contested whether New Mexico is actually unique for its system in which individual candidates must collect signatures in addition to their party—Appellants reach to granular levels

to make this claim while ignoring obvious similarities between New Mexico and other states. *See Rogers*, 468 F.3d at 197 (upholding a similar "two-tiered" system, noting New Mexico, and stating "the minimal burdens on minor political parties was justified by Pennsylvania's interest in preventing ballot clutter and ensuring viable candidates.").

Like many other states, New Mexico's Legislature has determined that its "admittedly vital" interests are best served by the signature requirements of the Election Code, and these interests outweigh the minimal burden imposed on Appellants. *See Am. Party of Tex.*, 415 U.S at 782. Appellants cannot make a strong showing that those signature requirements will be held unconstitutional.

## III
## <u>APPELLANTS CANNOT ESTABLISH IRREPARABLE HARM</u>

The Court could deny an injunction on appeal for failure to show a likelihood of success alone. *See Sierra Club, Inc. v. Bostick*, 539 F. App'x 885, 888 (10th Cir. 2013). Appellants do not disagree that the presence of irreparable injury to their rights "turns on whether the plaintiff has shown a clear likelihood of success on the merits," yet they have not done so. *See SAM Party of New York v. Kosinski*, 987 F.3d 267, 278 (2d Cir. 2021). Moreover, the mere fact that Mr. Perls and Mr. Vigil were unable to meet the Election Code's requirements does not indicate some infringement on their constitutional rights, but a system working correctly to filter out candidates who cannot obtain sufficient voter support for *statewide* general

elections. When boiling down petition signature requirements to numbers, it is easy to forget what the signatures are: individual voters saying they would support a candidate. *See* § 1-8-65(C). Mr. Perls and Mr. Vigil, despite pursuing the admirable goal of participating in a statewide election, could not find enough voters willing to support them. Yet they believe they are irreparably harmed absent a court order forcing them on the general ballot to be presented to every voter in the state on election day. Appellants have not justified such an order.

## IV
## AN INJUNCTION WOULD HARM THE PUBLIC INTEREST IN NEW MEXICO

Appellants give short shrift to the public's interest in enforcing its own election laws, even though those laws are designed to put candidates forward that the public has shown some support for. They hang their hat on two assertions: that New Mexico has no legitimate interest in enforcing invalid laws, and that adding Mr. Perls and Mr. Vigil to the ballot is "a negligible administrative burden." Doc. 2-1, at 16. The first point relies on the hefty assumption that Appellants will succeed on the merits, which is unlikely given the reasons above and those in the district court's order. Preventing a state "from conducting this year's elections pursuant to a statute enacted by the Legislature," unless unconstitutional, would "seriously and irreparably harm the State." *Abbott v. Perez*, 585 U.S. 579, 602 (2018). The second

point misunderstands the work that goes into planning, conducting, and executing a statewide election.

The Election Code sets forth strict deadlines for printing, proofing, certifying, and mailing ballots. One of those deadlines has already passed. All 33 county clerks have now prepared and certified a separate ballot for each precinct in the county and sent those ballots to the printer. Vigil Decl., Ex. 1, ¶ 4; N.M. Stat. Ann. § 1-10-4. Adding Mr. Perls and Mr. Vigil to the ballot would require ignoring that deadline and having each county clerk prepare new ballots and re-certify them. County Clerks must have sufficient ballots ready to mail to federal qualified electors by September 18, and actually mail them by September 19. Vigil Decl., Ex. 1, ¶ 4. The Secretary's Elections Director has attested to the sheer amount of work it takes to print ballots, ensure that they are properly coded and readable by tabulators, tested and re-tested, and available to the 33 counties and 2,204 precincts in New Mexico. *Id*. ¶ 7. The notion that additional candidates can simply be added to a ballot this late in an election year—and doing so would constitute "a negligible administrative burden"—is naive and a severe misunderstanding of reality. *Id*. ¶¶ 5–10. The Secretary is no longer able to guarantee that New Mexico can place new candidates on the ballot without violating state and federal law and causing errors in the ballot. Vigil Decl., Ex. 1, ¶¶ 5–10.

## V
## THE SECRETARY REPRESENTS NEW MEXICO'S INTERESTS IN THIS MATTER

On September 10, the New Mexico Attorney General filed an amicus brief purporting to be "on behalf of" New Mexico and in support of Appellants. Doc. 4. The Attorney General did not appear in the matter below, despite his statutory duty to defend the laws of New Mexico and its officers. *See* N.M. Stat. Ann. § 8-5-2. The brief parrots Appellants' arguments, both the ones made in the motion here and at the district court, and altogether adds nothing new. The amicus ignores—or is unaware of—evidence presented at the district court's evidentiary hearing, for example how limitations on the time New Mexico Forward Party candidates had to gather signatures was "self-imposed and . . . not a burden imposed on Plaintiffs by the regulatory architecture." D.N.M. Doc. 22, at 17. The arguments made by the Secretary before the district court, and here, refute the content of the amicus brief.

Further, New Mexico has a divided executive department, in which the Secretary of State and Attorney General are independent and separately elected co-equal offices. N.M. Const. art. V, § 1. The Secretary of State is unequivocally the State's "chief election officer." N.M. Stat. Ann. § 1-2-1. She is charged with the duty to "maintain uniformity in the application, operation and interpretation of the Election Code." *Id*. The Attorney General does not share that duty. The amicus brief expresses a policy preference, but as explained above it misunderstands the law

when it proclaims New Mexico's signature requirements "are plainly unconstitutional" and "are not defensible under any state interest, much less a compelling one." Doc. 4-1, at 6. The New Mexico Supreme Court has explained that courts are not bound by even formal Attorney General opinions, issued under Section 8-5-2(D), "giving them such weight only as we deem they merit and no more. If we think them right, we follow and approve, and if convinced they are wrong, we reject and decline to feel ourselves bound." *City of Santa Rosa v. Jaramillo*, 1973-NMSC-119, ¶ 12, 85 N.M. 747. Because the amicus brief is wrong, it carries no weight here.

## CONCLUSION

There is nothing to "stay" and Appellants cannot meet their burden of demonstrating the disfavored injunction they seek should be issued. The motion should be denied.

Dated: September 11, 2026.

Respectfully submitted,

BARDACKE ALLISON MILLER LLP

By: */s/ Justin Miller*
Justin Miller
Michael Woods
141 E. Palace Avenue
Santa Fe, NM 87501
505-995-8000
justin@bardackeallison.com
michael@bardackeallison.com

*Counsel for Defendant-Appellee Maggie Toulouse Oliver, in her official capacity as Secretary of State of New Mexico*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

Pursuant to Fed. R. App. P. 32(g), this document complies with the type-volume limit of Fed. R. App. P. 27(d)(1)(D) and the word limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,184 words.

This document also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

BARDACKE ALLISON MILLER LLP

By: *_/s/ Justin Miller_*

## CERTIFICATE OF DIGITAL SUBMISSION

I certify that with respect to the foregoing, all required privacy redactions have been made under 10th Cir. R. 25.5; if required to file additional hard copies, the ECF submission is an exact copy of those documents; and this digital submission was scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

BARDACKE ALLISON MILLER LLP

By: */s/ Justin Miller*

**CERTIFICATE OF SERVICE**

I certify that I caused a true and correct copy of the foregoing to be filed through the Court's CM/ECF system, which caused all parties and counsel entitled to receive notice to be served electronically as more fully described on the Notice of Electronic Filing.

BARDACKE ALLISON MILLER LLP

By: */s/ Justin Miller*