**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**

| | |
|---|---|
| NEW MEXICO FORWARD PARTY, BOB PERLS, MICHAEL VIGIL, DENNIS DINGE, HARRY MONTOYA and FRANCES KAVA, | |
| Appellants, | |
| v. | No.: 26-2145 |
| MAGGIE TOULOUSE OLIVER, in her official capacity as Secretary of State of New Mexico, and BARBARA DELANEY, in her official capacity as County Clerk of Luna County, New Mexico, | |
| Appellees. | |

**APPELLANTS' REPLY TO THE SECRETARY OF STATE'S RESPONSE IN OPPOSITION TO APPELLANTS' EMERGENCY MOTION FOR STAY AND INJUNCTION PENDING APPEAL**

Plaintiff-Appellants New Mexico Forward Party ("NMFP"), Bob Perls, Michael Vigil, Dennis Dinge, Harry Montoya and Fraces Kava (collectively, "Appellants") respectfully submit this Reply to the Secretary of State's Response in Opposition to Appellants' Emergency Motion for Stay and Injunction Pending Appeal, ECF No. 5-1, filed on September 11, 2026 ("Opp.").

## I. APPELLANTS SEEK A PROHIBITORY INJUNCTION AND HAVE A STRONG LIKELIHOOD OF SUCCESS UNDER ANY STANDARD

The Secretary's assertion that Appellants' request for relief must be "closely scrutinized" because they seek a "disfavored" mandatory injunction is incorrect but also immaterial because Appellants have a strong likelihood of success under any standard. Opp. at 4. An order enjoining a defendant from enforcing a statute is the paradigm of prohibitory relief, and that is what

Appellants request here: an injunction against enforcement of N.M. Stat. Ann. §§ 1-8-2(B) and (E) as applied to them in the 2026 election cycle.[1] This Court has affirmed exactly that kind of preliminary injunction against the Secretary's enforcement of an election statute. *See Fish v. Kobach*, 840 F.3d 710, 724 (10th Cir. 2016). Further, the Secretary is incorrect that the requested injunction "would give Appellants everything they want out of this lawsuit." Opp. at 4. In addition to challenging other statutory provisions not at issue here, Appellants seek declaratory and permanent injunctive relief that the injunction will not grant. Compl., ECF No. 1, ¶ 91. In any event, the "disfavored" label requires closer scrutiny, *Schrier v. University of Colorado*, 427 F.3d 1253, 1261 (10th Cir. 2005); it is not a procedural bar that extinguishes constitutional claims which, by their nature, must be resolved before ballots are printed. *See Fish*, 840 F.3d at 724 (affirming injunction "even assuming *arguendo* that the heightened standard applies"). Appellants' showing survives close scrutiny for the reasons below.

## II. APPELLANTS HAVE A STRONG LIKELIHOOD OF SUCCESS

### A. The Burden on Appellants' Rights Is Severe.

Appellants have established that the 10 separate petitions containing 131,361 signatures New Mexico requires of them is severely burdensome under every standard the Supreme Court has recognized. Appellants' Motion, Doc. 2-1, at 8-12. The Secretary does not even attempt to show that burden can withstand constitutional scrutiny. Instead, like the District Court, the Secretary improperly measures Appellants' burden based on the 14,200-signature requirement imposed on a single candidate for statewide office. That is clear error. Under this Court's and the Supreme Court's binding precedent, ballot access requirements must be analyzed "in sum rather

[1] Defendant-Appellee DeLaney has conceded that N.M. Stat. Ann. § 1-8-2(E) is unconstitutional as applied to Plaintiff-Appellant Kava and agreed to place her on the ballot. Consequently, Appellants only need injunctive relief from N.M. Stat. Ann. § 1-8-2(B).

than in isolation," considering their "practical effect … viewed in their totality." *Utah Republican Party v. Cox*, 892 F.3d 1066, 1088 (10th Cir. 2018) (citations omitted). Appellants do not seek to run a single candidate for statewide office. They seek to establish a new political party and run candidates for all offices at the local, state and federal level—indeed, Appellants established NMFP specifically because they seek "to provide competition and voter choice in New Mexico's many non-competitive elections." Compl., ECF No. 1, at ¶ 6. To do that, they must comply with § 1-8-2(B) in each race in which they compete—meaning they must submit 10 separate petitions with 131,361 signatures just to run their slate of statewide candidates, plus additional petitions with additional signatures for each candidate in a down-ballot race. That is the true "character and magnitude" of the burden on Appellants' First and Fourteenth Amendment rights. *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).

The Secretary notes that "there are not nine candidates in this lawsuit who failed to qualify for the ballot," Opp. at 7, as if that diminishes the burden that § 1-8-2(B) imposes. It does not. The uncontested evidence shows that the challenged provisions—and § 1-8-2(B) in particular—eviscerated NMFP's ability to recruit candidates. Perls Decl., ECF No. 8-3, ¶¶ 7-8, 11. Appellants lost 12 credible candidates as a result. *Id.* at ¶ 7. That § 1-8-2(B) dissuades candidates from attempting to run for office—that it chills their exercise of First Amendment rights—is itself a constitutional violation. *See New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1500-01 (10th Cir. 1995) (recognizing that the "mere existence" of an unconstitutional statute chilled plaintiff from exercising his rights); *Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 364 (3rd Cir. 2014) (recognizing that unconstitutional statute "inherently burdens [plaintiffs'] electioneering activity.").

The Secretary next attempts to minimize Appellants' burden by noting that voters may sign multiple petitions, and that NMFP's candidates could have obtained signatures from the same 14,200 voters. Opp. at 7-8. Setting aside the utter impracticality of such an endeavor, this proves Appellants' point: if the support of 14,200 voters is sufficient to qualify NMFP's entire slate of statewide candidates, what interest does New Mexico have in requiring that they submit 10 separate petitions with 131,361 total signatures—even if the same voter can sign all 10 petitions? That is the unique—and uniquely burdensome—aspect of New Mexico's statutory scheme. Every other state that allows political parties to qualify by petition allows them to do so by means of one petition that entitles the party to place all its nominees on the general election ballot. Winger Decl., ECF No. 8-1, ¶¶ 15-17.

Appellants thus challenge New Mexico's statutory scheme not simply because it is "unique," as the Secretary suggests, Opp. at 15, but because its requirements are more restrictive, by far, than any other state in the nation, and because they exceed those of New Mexico's neighboring states by many orders of magnitude even though those states have much larger populations. Appellant's Motion, ECF No. 2-1, at 8-9. The Secretary insists that it is "contested" whether New Mexico is unique in imposing a separate petition requirement on each candidate nominated by a qualified minor party, but conspicuously fails to cite even one other example. The Secretary fails because there is no such state. Winger Decl., ECF No. 8-1, ¶ 17. The best the Secretary can do is vaguely assert that Pennsylvania's "two-tiered" system is "similar" to New Mexico's. Opp. at 16 (citing *Rogers v. Corbett*, 468 F.3d 188, 197 (3rd Cir. 2006)). That is incorrect. Pennsylvania's system is nothing like New Mexico's in any constitutionally relevant sense: it does not require an unqualified party to submit a petition, and then require each of the party's nominees to submit a separate petition; indeed, it does not require a separate party petition

at all but allows all the party's candidates to qualify via the same single petition. *See* 25 P.S. § 2911 (nominations by political bodies). Thus, neither the character nor the magnitude of the burden Pennsylvania's scheme imposes is similar to the burden imposed by New Mexico here. Moreover, the scheme upheld in *Rogers* has since been held unconstitutional, and its signature requirement—which was already much lower than New Mexico's—has been substantially reduced by court order. *See Constitution Party of Pa. v. Cortes*, 116 F.Supp.3d 486 (E.D. Pa. 2015), *aff'd*, 824 F.3d 386 (3rd Cir. 2016).

The pre-*Anderson* cases the Secretary cites are also unavailing, Opp. at 8-9, because they apply a "less stringent framework" than the *Anderson/Burdick* analysis now requires. *Graveline v. Johnson*, 747 F. App'x 408, 413-14 (6th Cir. 2018); *see also Anderson*, 460 U.S. at 817 (Rehnquist, J., dissenting) (noting that prior cases had not used the "narrowly tailored" test applied in *Anderson*). Additionally, the Secretary misstates what these cases say. In *Storer* the Supreme Court did not "accept" that California's ballot access requirements survived scrutiny, as the Secretary suggests, Opp. at 8, but rather remanded for further findings to make that determination. *See Storer v. Brown*, 415 U.S. 724, 738-40 (1974). In *American Party of Texas* the 22,000 signature requirement applied not to a single candidate, as the Secretary incorrectly asserts, Opp. at 8, but to a petition entitling a party to place all its candidates for federal, state and local offices on the general election ballot. *See American Party of Texas v. White*, 415 U.S. 767, 777 (1974). And in *Jenness* the Court upheld Georgia's statutory scheme largely because candidates had complied with it in each of the two preceding election cycles. *See Jenness v. Fortson*, 403 U.S. 431, 439 (1971). The Secretary cannot make the same showing here, because the uncontested facts—New Mexico's official election results—establish that for at least two decades, minor party and independent candidates almost never qualify, particularly for statewide office. Compl., ECF No.

1, ¶¶ 54-76; Winger Decl., ECF No. 8-1, ¶¶ 22-25. From 2002 to 2024, there have been no federal or state office races (other than President) with more than three candidates on the ballot, and in almost every one of those races, just two candidates or one candidate qualified for the ballot. Winger Decl., ECF No. 8-1, ¶ 23. That is also true of statewide state offices. *Id.* ¶ 24. In that same period, in all general elections for state and federal office (except President) the average number of candidates in each race was less than two. *Id.* ¶ 25.

Against this undeniable evidence of a frozen political status quo, *see Jenness*, 403 U.S. at 439, the Secretary notes that "60%" of NMFP's candidates qualified, Opp. at 10, but all three were candidates for <u>local</u> office who needed a fraction of the signatures required of candidates for statewide office, and one—Appellant Kava—was placed on the ballot as a result of this action. Appellant's Motion at 11. The qualification of these local candidates does not undermine the uncontroverted historical evidence that candidates for federal and state office almost never qualify. Furthermore, the Secretary's assertion that several minor parties' candidates for statewide office have qualified in the last ten years is misleading: the candidates cited all ran for <u>President</u>, and New Mexico imposes no petition requirement whatsoever upon candidates for President. Opp. at 11; *but see* § 1-8-2(A)(1).[2] And while the Secretary protests the lack of evidence that other minor party candidates have tried but failed to qualify, that is because New Mexico does not keep records of failed petition drives. Furthermore, the "past experience" test in *Storer* does not demand such evidence: rather, a showing that candidates "only rarely" comply is itself sufficient to support the conclusion that ballot access requirements are severely burdensome. *Storer*, 415 U.S. at 742. The record here satisfies that test.

[2] The Libertarian Party's fleeting success is the exception that proves the rule: it rode the coattails of its Presidential nominee Gary Johnson, a popular former Republican two-term Governor, but it has since lost its status and faces the same predicament as NMFP.

Finally, the Secretary attacks NMFP's statewide candidates for being insufficiently "diligent" but disregards that both gathered enough signatures to exceed the requirements on major party candidates seeking access to the primary ballot. Opp. at 9-10; Perls Decl., ECF No. 8-3, ¶ 17; Vigil Decl., ECF No. 8-2, ¶ 12. They have demonstrated a modicum of support and are entitled to appear on the general election ballot no less than the nominees of any other qualified party.[3]

**B. The Secretary's Assertion of Generic State Interests Does Not Justify the Severe Burden Imposed on Appellants.**

The familiar litany of state interests the Secretary asserts—the prevention of "overcrowding, voter confusion, and frivolous candidacies"—cannot justify the severe burdens Appellants have established here. Opp. at 12. Instead, when election laws impose "severe" burdens, as New Mexico's surely do, they must be "narrowly drawn to advance a state interest of compelling importance." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (citation and quotation marks omitted). The Secretary makes no attempt to meet that standard.

The issue is not whether New Mexico has an "interest in requiring candidates to demonstrate support to get on the ballot," as the Secretary suggests, Opp. at 11, but whether the support that New Mexico requires is unconstitutionally burdensome. The Secretary never addresses that issue. Plaintiffs have shown that New Mexico's requirements are, by far, the highest in the nation, that they are more than 13 times greater than Colorado's, more than 65 times greater

[3] The District Court's disagreement on this point was based on error: it distinguished *Maryland Green Party v. Maryland Bd. of Elections*, 832 A.2d 214 (2003), which invalidated the only other state statutory scheme that required nominees of a qualified minor party to petition for access to the general election ballot, on the ground that "the candidate's signature requirement was less than the minor party's requirement," whereas "minor party candidates in New Mexico must demonstrate support equal to or greater than the minor party. Order Denying Motion for Preliminary Injunction, ECF No. 22 (Sept. 2, 2026), at 23. In fact, however, Maryland's 1 percent signature requirement for statewide candidates was far greater than the 10,000 signatures required of the party itself. *See Maryland Green Party*, 832 A.2d at 219-20. It translated to approximately 27,000 signatures. *See* Maryland State Board of Elections, *Voter Registration Figures By County* (October 15, 2002), available at https://elections.maryland.gov/pdf/vrar/0002_1015.pdf (accessed September 12, 2026). Maryland's statutory scheme was therefore materially indistinguishable from New Mexico's, and the District Court erred in concluding otherwise.

than Utah's, and that they surpass even those of Texas, even though each of these states' populations is far larger than New Mexico. Yet the Secretary fails to assert any reason why New Mexico must impose such wildly disproportionate requirements.

Nor can the Secretary's invocation of ballot "overcrowding" or "frivolous candidacies" be credited. The uncontested evidence proves that, far from a ballot cluttered with unqualified candidates, <u>in the last two decades New Mexico has averaged less than two candidates per race in all general elections for state and federal office (except President)</u>. Winger Decl., ECF No. 8-1, ¶ 25. States may not be required to present evidence of harm to their electoral processes prior to enacting reasonable regulations, Opp. at 15, but that does not give them license to ignore evidence establishing that their requirements are not reasonable. That is what the evidence shows here: New Mexico's requirements are far more severe than any other state's, and the result is that minor party and independent candidates almost never comply.

The Secretary's asserted interests ring hollow for another reason. New Mexico imposes no petition requirement whatsoever on Presidential candidates, yet New Mexico never suffers from overcrowded ballots or frivolous candidacies in its presidential elections. That is further confirmation that the party petition required by § 1-7-2(A) is sufficient, by itself, to protect New Mexico's regulatory interests, and that the candidate petitions required by § 1-8-1(B) are superfluous.

Finally, the State of New Mexico itself has submitted an amicus brief conceding that its statutory scheme is "plainly unconstitutional." The Secretary's unsupported assertions to the contrary should be rejected.

## CONCLUSION

For the foregoing reasons, the Court should stay the District Court's Order denying Appellants a preliminary injunction, and the Court should grant Appellants' Motion and Order the Secretary to place Appellants Perl and Vigil on New Mexico's 2026 general election ballot.

Respectfully submitted,

*/s/ Oliver B. Hall*

Oliver B. Hall
*Pro hac vice*
D.C. Bar No. 976463
Center for Competitive Democracy
P.O. Box 21090
Washington, DC 20009
(202) 248-9294
oliverhall@competitivedemocracy.org

WESTERN AGRICULTURE,
RESOURCE AND BUSINESS
ADVOCATES, LLP

A. Blair Dunn, Esq.
Jared R. Vander Dussen, Esq.
400 Gold Ave. SW, Suite 1000
Albuquerque, NM 87102
Telephone: (505) 750-3060
Facsimile: (505) 226-8500
abdunn@ablairdunn-esq.com
warba.llp.Jared@gmail.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 13, 2026, a true and correct copy of the foregoing was filed electronically pursuant to the CM/ECF procedure for the District of New Mexico and caused counsel of record to be served by electronic means.

*/s/Oliver B. Hall*
Oliver B. Hall